UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Lukes Ploetz,                               Case No. 19-27785-beh

              Debtor.                            Chapter 7

**DECISION AND ORDER ON DEBTOR'S MOTION TO REOPEN, VACATE HIS DISCHARGE, AND EXPUNGE HIS COURT RECORDS**

Debtor Lukes Ploetz asked the Court to reopen his Chapter 7 case, vacate his discharge, and expunge or seal his bankruptcy court records. Because there is no indication in the record that his case was filed without his authorization or the filings were untrue, the Court finds no basis in the Code to vacate his discharge or expunge the full record. Debtor has stated a basis to restrict access to several documents describing personal health information, and so the Court will reopen his case for the limited purpose of restricting those documents.

### FACTUAL BACKGROUND

Mr. Ploetz filed his Chapter 7 case on August 12, 2019, with assistance of counsel. He received his discharge on November 20, 2019.

1

Fifteen months later, on February 1, 2021, Mr. Ploetz wrote the Court to state his belief that he was "legally incapacitated" at the time he signed his Chapter 7 petition and schedules. He described some earlier treatment and diagnoses of mental health conditions. His letter stated he wished to "pay back my debt in FULL." ECF No. 12. The Court responded by letter on February 2, 2021 copying the Chapter 7 trustee and noting that because Mr. Ploetz's letter did not state a legal basis for relief, and the Court was unable to provide legal advice, it could not act on his letter. ECF No. 13.

On August 27, 2021, the debtor wrote again, describing several diagnoses he said he had received since May 2019, and some health care and other assistance since that time. ECF No. 18. His letter asserted that he "ha[d] a legal basis for having my ch. 7 bankruptcy orders vacated and my bankruptcy dismissed with the records sealed," although again he cited no bankruptcy law. He did cite 42 C.F.R. § 435.1010, a federal regulation describing intellectual disability. His correspondence attached a photocopy of a letter from Dr. Vanessa Hintz.

The Court held a preliminary hearing on September 21, 2021, at which the debtor and counsel who assisted in filing his petition appeared. *See* ECF No. 24. After extensive testimony by the debtor in response to the Court's questions, as well as the Court identifying a number of concerns as to its ability to grant some or all of the requested relief, the Court adjourned the matter to October 20, 2021, in order to receive any additional evidence the debtor might provide. Ultimately he only added argument, but not any new evidence at the adjourned hearing.

A summary of Mr. Ploetz' testimony follows. Mr. Ploetz filed his Chapter 7 bankruptcy case on August 12, 2019, despite his parents advising against it. No one coerced him into filing. He asked lawyers at the Lombardo Law Firm to assist him in filing the case. He felt he couldn't move forward at that point and needed to "immediately get rid of his debts." His goal was to have his debts discharged. His schedules listed a tuition expense of $1,800, about which he explained he had taken a certified nursing assistant class in the Fall of 2018,

2

Case 19-27785-beh    Doc 34    Filed 01/20/22    Page 2 of 20

and then decided against a healthcare position, preferring to pursue opportunities in the field of information technology. His schedules listed two LLCs that he had formed prior to filing, one in 2016 and one in 2019. Neither was operational at the time he filed his bankruptcy case.

Mr. Ploetz attended the § 341 meeting of creditors on September 17, 2019, accompanied by counsel. He did not tell the Chapter 7 trustee that he no longer wanted a discharge or that he did not want to pursue his case. When the Court asked Mr. Ploetz about the section 341 meeting, he stated "at that point I thought it was too late, I was not comprehending what bankruptcy would do . . . to my credit report, my life too." He stated that there was nothing untrue in the documents filed in his case. He acknowledged that his lawyer "told me [filing the bankruptcy] probably would affect my credit report," but that he did not fully comprehend what that would mean.

During the hearing on this motion, Mr. Ploetz suggested that if the Court was unwilling to expunge or seal his bankruptcy case records, perhaps his entire record could be restricted from public view, as it contained several pieces of correspondence relating to treatment or assistance he had received in 2019. To support the option of restriction from public view, Mr. Ploetz cited 11 U.S.C §§ 105, 107 and 109(f). He also offered that it would not be possible to "bring up", *i.e.*, view the docket of, his bankruptcy case without viewing confidential information protected by HIPAA rules (*see* Health Insurance Portability and Accountability Act of 1996).

**LEGAL ANALYSIS**

**A.     Reopening of the Case**

The Court first must determine whether there is a basis to reopen the debtor's bankruptcy case, which has been closed for over two years. Motions to reopen a bankruptcy case are permitted by 11 U.S.C. § 350(b).[1] While this Code provision gives the bankruptcy court broad discretion in deciding whether

---

[1] "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

to reopen a case, *see In re Shondel,* 950 F.2d 1301, 1304 (7th Cir. 1991), the Seventh Circuit instructs that courts should consider several factors in making that determination, including: "(1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of non-bankruptcy courts, such as state courts, to entertain the claims." *Redmond v. Fifth Third Bank,* 624 F.3d 793, 798 (7th Cir. 2010).

To a limited extent, the first and third factors weigh in the debtor's favor. Although Mr. Ploetz's case has been closed for over two years,[2] the correspondence he seeks to restrict from public view (at a minimum) was filed in 2021, after his discharge was entered and his case was closed. In addition, no non-bankruptcy forum would be able to afford Mr. Ploetz any of the various relief alternatives he seeks. The Court's determination therefore hinges on the second *Redmond* factor: whether the debtor would be entitled to relief if the case were reopened.

Mr. Ploetz makes several alternate requests in his filings: an order vacating his discharge, and an order restricting the public's ability to access his court records to varying degrees. Because Mr. Ploetz is acting *pro se* now, the Court will construe his filings liberally and finds them to request five alternate types of relief.

### 1. Reversal of the Discharge

Mr. Ploetz first asks to vacate his discharge. The Court understands this to be a request to vacate his discharge order under Federal Rule of Civil Procedure 60(b), incorporated by Federal Rule of Bankruptcy Procedure 9024. Civil Rule 60(c), which also applies to the debtor's motion to reopen, provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment

---

[2] It is likely Mr. Ploetz's creditors already had come to rely on the permanency of his discharge by the time he filed his August 2021 letter-motion. *In re Mi Jung Hong,* No. 2:11–bk–39687–RK, 2014 WL 465562, at *6 (Bankr. C.D. Cal. Feb. 5, 2014) (post-discharge, creditors are likely to divert their collection practices elsewhere).

4

or order or the date of the proceeding." Because Mr. Ploetz filed his motion more than a year after his discharge was entered, he cannot rely on any of the bases for relief identified in subsections (b)(1) ("mistake, inadvertence, surprise, or excusable neglect"), (b)(2) (newly discovered evidence), or (b)(3) (fraud or misconduct by an opposing party). Instead, to the extent Rule 60(b) may be of any aid to the debtor, the possible grounds for relief he may invoke include that the judgment is void ((b)(4)), that the judgment has been satisfied or "applying it prospectively is no longer equitable" ((b)(5)), and the existence of "any other reason that justifies relief" ((b)(6)).

Even if Mr. Ploetz had recited one of the latter three subsections of Rule 60(b), however, he still was required to file his motion within a reasonable time. *See In re Mi Jung Hong,* No. 2:11-BK-39687, 2014 WL 465562 at * 7 (Bankr. C.D. Cal. Feb. 5, 2014) (a debtor seeking to vacate her discharge two years after her petition did not bring her request within a reasonable time, as her circumstances had not changed and the granting of her request threatened prejudice to her creditors). Here, Mr. Ploetz has brought his motion after a similar delay as did the debtor in *Mi Jung Ho*, he does not describe changed circumstances since filing his case (other than a heightened understanding of the effect of a bankruptcy case and discharge),[3] and creditors have come to rely on his discharge (moreover, his statement that he wishes to pay his creditors the debts that have been discharged does not identify projected timing of such payments).

Ploetz's request is not similar to the case of *In re Herrera,* 554 B.R. 262 (Bankr. D.N.M. 2016), where a debtor sought to voluntarily dismiss his case shortly after he filed it, in part because he asserted his cognitive disabilities prevented him from understanding the nature and effect of filing his Chapter 7 case. The *Herrera* court assessed that the debtor had received bad advice from

---

[3] Bankruptcy courts have ruled repeatedly that a negative impact on credit history is insufficient to justify vacating a discharge. "A debtor ought not be able to reap the advantages of a discharge and to later obtain a vacating of the discharge when she realizes the discharge has adverse consequences as well." In re Newton, 490 B.R. 126, 129 (Bankr. D.D.C. 2013).

friends, and mistakenly relied on legal advice from a bankruptcy petition preparer. He promptly sought dismissal after his section 341 meeting, as he realized he might lose his house or rental property as assets the trustee would use to pay his credit card debt. 554 B.R. at 269–70. His creditors were not likely to be prejudiced by dismissal, because there was only a slight delay between the initiation of the case and the request to dismiss, and they retained state law rights. *Id.* at 270. Ploetz, in contrast, had the assistance of a lawyer, who advised him of at least some of the potential consequence of filing for bankruptcy. And Ploetz's request to vacate his discharge comes twenty months after he received his discharge. In balancing the debtor's request with finality interests, *see Mendez v. Republic Bank,* 725 F.3d 651, 657 (7th Cir. 2013) (restricting relief under Rule 60(b) to balance the availability of post-judgment relief with the interests of finality), the Court does not find the timing of his motion to be reasonable and will not grant his request to vacate his discharge.

### 2. Expungement

Mr. Ploetz's second request is to expunge the record of his bankruptcy case. This Court recently addressed a debtor's motion to expunge the record in three cases filed on her behalf, and much of the analysis therein is applicable here. *See In re Chapman*, Case Nos. 18-30442, 19-22820, 19-26731, 2021 WL 1346046 (Bankr. E.D. Wis. March 26, 2021).

"Expunging a bankruptcy case is a rare event, to be exercised with the greatest of prudence." *In re Buppelman*, 269 B.R. 341, 341 (Bankr. M.D. Pa. 2001) (cited in *Chapman*, 2021 WL 1346046, at *3). In *Chapman*, the debtor asserted that the bankruptcy court had statutory authority either to expunge bankruptcy records under 11 U.S.C. § 105, or to seal the records under § 107. The court noted that section 105(a) of the Code "imbues the Court with equitable powers to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,'" while section 107(b)(2) "permits the Court to 'protect a person with respect to scandalous or

6

Case 19-27785-beh    Doc 34    Filed 01/20/22    Page 6 of 20

defamatory matter contained in a paper filed in a case under this title.'" 2021 WL 1346046, at *5.

To the extent Mr. Ploetz, like the debtor in *Chapman*, argues that the bankruptcy court has inherent equitable power to expunge records, such an avenue is foreclosed by a recent Seventh Circuit decision, *U.S. v. Wahi*, 850 F.3d 296 (7th Cir. 2017). The Court repeats its assessment of the *Wahi* guidance here:

> The *Wahi* court begins with the long-standing principle [f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not be expanded by judicial decree.' 850 F.3d at 299 (quoting *Kokkonen*, 511 U.S. at 377). Where there is no explicit expungement authority, a court's only source of jurisdiction falls to 'ancillary jurisdiction.' *Id.* at 300. There is no dispute that the Bankruptcy Code does not supply explicit authority for expungement.[4]
>
> Ancillary jurisdiction allows 'federal courts [to] have a limited inherent authority to assert jurisdiction 'over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.;" *Id.* (quoting *Kokkonen*, 511 U.S. at 378). Further such jurisdiction may be exercised for only two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* (quoting *Kokkonen*, 511 U.S. at 379-80).
>
> Assessing whether a court may expunge (criminal) records on purely equitable grounds, the *Wahi* court first fond that expungement "is not factually dependent on the underlying []case … Instead, it will always turn on facts collateral to or arising after

---

[4] This lack of authority for expungement is in contrast to the express authority to seal records from public view under § 107(b) and Fed. R. Bankr. P. 9018. . . . While some courts use the terms "expunge" and "seal" interchangeably, the two acts have different standards and effects. This Court understands expungement to mean the complete removal of a bankruptcy case from court records, as if the filing never happened. *See, e.g., In re Joyce*, 399 B.R. 382-385-86 (Bankr. D. Del. 2009); *In re Buppelmann*, 269 B.R. at 343. Sealing, on the other hand, refers to the restriction of access to papers filed in bankruptcy cases and the dockets of a bankruptcy court, under 11 U.S.C. § 107(b), (c). Although some courts have suggested that expungement orders are authorized under 11 U.S.C. § 107(b), *see, e.g. Joyce*, 399 B.R. at 386 n.2, the Court need not reach that question because, as discussed (above) Ms. Chapman does not meet the requirements to warrant protection under §107(b).

7

> the case is over – in short, matters external to the []case itself." –
> for example, a defendant's inability to secure professional
> employment "because of the reputational taint associated with the
> public record of his indictment and arrest," or a defendant's post-
> judgment good behavior. *Id.* at 302.

*Chapman*, 2021 WL 1346046, at *6. Here, Mr. Ploetz's concerns about ill-effects on his credit report, difficulty in being able to rent an apartment, or eligibility for a business grant from the Department of Vocational Rehabilitation (as well as any other equitable reasons that might call for expungement) are, like the collateral facts described in *Wahi*, circumstances that arose outside of the bankruptcy case.

There is another part to the determination of whether a court has power to expunge on equitable grounds. *Wahi* explained that the court must consider whether expungement would affect the court's ability to function successfully as a court:

> Equitable expungement is not needed to enable the court to
> "manage its proceedings" for the simple reason that the criminal
> proceedings are over. Nor is expungement authority needed to
> enable the court to "vindicate its authority" or "effectuate its
> decrees." Expungement is not a remedial tool to enforce a ruling in
> the underlying criminal case. In short, equitable expungement "is
> in no way essential to the conduct of federal-court business."
> *Wahi*, 850 F.3d at 302 (internal citations to *Kokkonen* omitted).

*Chapman*, 2021 WL 1346046, at *6–7. For the same reasons, this Court's "inherent equitable power" derived from 11 U.S.C. § 105(a) is an insufficient basis, standing alone, to confer jurisdiction to expunge Mr. Ploetz's bankruptcy case. Even considering in retrospect that Mr. Ploetz may have been or was suffering from a condition that limited his full appreciation of the consequences of filing a Chapter 7 bankruptcy and receiving a discharge, expungement is not required to vindicate the Court's authority to issue such an order. The fact that the debtor filed his case with the assistance of counsel, took the required credit counseling courses, and did not relay any disability or misgivings about his

case filing to the Chapter 7 trustee during the section 341 meeting negate efforts to undermine the validity of the discharge.

### 3. Sealing Records

If expungement is not granted here, Mr. Ploetz alternatively asks that the Court permanently seal his case records. This request is rooted in the Court's statutory powers conferred by 11 U.S.C. § 107.

Under 11 U.S.C. § 107(a), all papers filed in bankruptcy cases and the dockets of bankruptcy courts are public records subject to examination by members of the public. Filing for bankruptcy is a public act. *In re Joyce*, 399 B.R. 382, 385 (Bankr. D. Del. 2009) (citing *2 Collier on Bankruptcy* ¶ 107.02 (15th ed. 2008)). A court's ability to limit that public examination is circumscribed under 11 U.S.C. §§ 107(b) and (c) and Fed. R. Bankr. P. 9018.

Section 107(b) of the Code provides limited authority to seal bankruptcy records:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) Protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) Protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).

Bankruptcy Rule 9018 sets the procedure for invoking the court's power under § 107(b):

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires … to protect any entity against scandalous or defamatory mater contained in any paper filed in a case under the Code . . . .

Fed. R. Bankr. P. 9018.

Mr. Ploetz does not contend expressly that the record in his bankruptcy case contains "scandalous or defamatory matter" that should be permanently sealed. He agrees that the documents filed in his case are true and accurate, to

9

Case 19-27785-beh    Doc 34    Filed 01/20/22    Page 9 of 20

the best of his knowledge. But he does assert that sealing his case record will mitigate damage to his credit profile. The Court considered a similar argument in *Chapman*, and caselaw under section 107(b). For example, in *In re Phar-Mor, Inc.*, 191 B.R. 675 (Bankr. N.D. Ohio 1995),

> [t]he defendants in an adversary proceeding sought to have a complaint permanently sealed, arguing that the allegations against them were untrue. 191 B.R. at 678. The court explained that "[b]ecause Congress enacted an express statutory scheme, issues concerning public disclosure of documents in bankruptcy cases should be resolved under § 107…. The discretion lies not in whether a court may protect an interested party, but in whether the matters complained of fall within the exception and in what type of protective remedy is necessary under the facts of each case." 191 B.R. at 679. In assessing whether the allegations were "scandalous" or "defamatory," the *Phar-Mor* court considered whether reasonable person could alter their opinion of defendants based on the statements, taking them in context. *Id.* It answered 'yes,' because the complaint contained allegations of wrongdoing by the defendants for acts of another, without an explanation. *Id.* at 679-080. The court thus found that the defendants were entitled to protection and assessed the degree of protection needed. Id. at 680. It was unable to take the least restrictive step, redacting defendants' names from the complaint, and so it gave the plaintiff thirty days to withdraw the complaint, before taking further action. *Id.*
>
> Another case (applying sec. 107(b)) is *Gitto v. Worcester Tel. & Gazette Corp.* (*In re Gitto Global Corp.*) 422 F.3d 1 (1st Cir. 2005). In that case, the court expanded on *Phar-Mor*, by establishing a standard for proving whether the material would cause a reasonable person to alter his or her opinions: (1) if the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end. *Id.* at 14. The movants in *Gitto* were the former CEO of the debtor-company, and his father, seeking to seal a report generated by a court-appointed examiner. *Id.* at 15. They offered no proof that the material in the report was inaccurate or untrue, so the court considered the second standard. *Id.* the Court found that while the material could be potentially untrue, it was not irrelevant – as it was the information the court asked the examiner to investigate – and it was not filed for improper mans – as the examiner was a

10

> disinterested party and there was no indication of bad faith. Id. at 15-16. There was no basis to seal.
>
> The test established by *Gitto* was employed in another case, *In re Neal*, 461 F.3d 1048 (8th Cir. 2006). In *Neal,* the debtor asserted that a creditor list was "scandalous" because she had been a judge, and her creditors were lawyers who had lent her money. The appellate court disagree, holding that the creditor list was not untrue and reasoning that '[p]otential scandal only surfaces when one looks 'outside the lines' of the bankruptcy proceeding, looks outside the content of this bankruptcy filing, and speculates as to the motives of the creditor and the debtor." *Id.* at 1054. Further the creditor list was required to be filed under the Bankruptcy Code, and there was "no allegation that the list … was filed for an improper purpose, such as to gratify public spite or promote public scandal." *Id.*

*Chapman*, 2021 WL 1346046, at *8. Here, the Court cannot conclude that Mr. Ploetz's bankruptcy filings are "scandalous" or "defamatory." The filings themselves are not untrue, as Mr. Ploetz has acknowledged. And as the Court concluded in *Chapman*, "[e]ven if the Court could overlook the truth of the filings, there is no indication that they were filed for an irrelevant or improper purpose." *Id.* Mr. Ploetz acknowledged that, at the time of filing, he desired an "immediate" discharge of his debts, even though his parents counseled otherwise. He sought out the assistance of a bankruptcy lawyer to aid him. He fulfilled his obligations necessary to obtain a discharge, including taking both the credit counseling and financial management courses,[5] and testifying at the section 341 meeting of creditors.

Mr. Ploetz voiced a concern about the publicly-accessible state of his bankruptcy records similar to that voiced by Ms. Chapman regarding her cases, a concern that creditors will see his or her bankruptcy case records and infer an effort to mistreat creditors, past or present. *See id.* at *8. But

> [s]uch a concern is 'looking outside the lines' and *speculation* as to motives, conduct which does not make the filings themselves

---

[5] While Mr. Ploetz testified that he used other online resources to help him complete the credit counseling and financial management courses, undertaking that research does not make his filings or certifications "false."

11

> "scandalous" or "defamatory." *See In re Neal, supra.* Indeed, bankruptcy courts invoking § 107(b) have routinely held that authorized or knowing filings do not constitute "scandalous or defamatory" material based solely on repercussions or potential repercussions. *See, e.g., In re Whitener*, 57 B.R. 707 (Bankr. E.D. Va. 1986); *In re Henry*, Case No. 17-36854, 2019 WL 623873 (Bankr. S.D. Tex. 2019); *In re Joyce*, 399 B.R. 382, 385 (Bankr. D. Del. 2009).
>
> In *Whitener*, for example, the debtor received his Chapter 7 discharge in 1980, but then voluntarily repaid all of his creditors by 1985. 57 B.R. at 708. He requested that the court seal his bankruptcy record, because having paid his pre-petition debts in full, he felt the bankruptcy records were misleading to credit agencies. *Id.* The court declined to seal the petition because "[i]t is undisputed that the information in the … case is true. The dissemination of truthful matter cannot be enjoined merely because the matter is prejudicial." *Id.* at 709. *See also In re Creighton*, 490 B.R. 240, 245 (Bankr. N.D. Ohio 2013) (mere filing of bankruptcy was not "scandalous" even fi debtor was subject to ridicule at work and in community due to knowledge of her filing, even effect on her mental health was not caused by public access to information but by the way some people had used that information).

*Chapman*, 2021 WL 1346046, at *8.

Because the case filings themselves are not scandalous or defamatory, this ends the Court's inquiry under § 107(b), and forecloses Mr. Ploetz's request to seal.

### 4. Annotation of the Record

Other courts have taken measures short of expungement or sealing, to indicate that a debtor's case was of no effect. The *In re Joyce* court discussed the difference between expunging and voiding a bankruptcy case: the former permits debtors to say they have never filed for bankruptcy, the latter makes a notation on the case file indicating the case should be disregarded for a certain reason. 399 B.R. at 386–88. The *Joyce* case involved a debtor whose identity was stolen by a creditor. *Id.* at 385. The court declined his request for full expungement, finding "no clear statutory authority that allows a bankruptcy

court to order expungement." *Id.* at 386. The court also declined to void his case, as he could not show that any of the debts in his bankruptcy filing were incurred by anyone other than himself. *Id.* at 388.

Another identity theft victim was not accorded a full expungement in *In re Dick*, No. 5-80347-BJH-13, 2006 WL 6544157 (Bankr. N.D. Tex. May 19, 2006). After someone submitted a petition for bankruptcy on her behalf without her permission, debtor Anita Dick asked the court to reopen her case to expunge her record. *Id* at *2. The court reasoned that expungement would not guarantee the relief the debtor sought, as credit reporting agencies already had indicated on her credit report that her case had been filed. *Id.* at *5. Instead, the Court flagged her case as one filed by identity theft. *Id.* "[E]xpunging the case at this point may make it *more* difficult for the Purported Debtor to convince the credit reporting agencies and prospective creditors that the filing was unauthorized, as the Case would be more akin to an apparition . . . ." *Id.* Each of these cases pre-date the Seventh Circuit's decision in *Wahi*, 850 F.3d 296. To the extent that *Wahi* does not restrict this Court's jurisdiction to order Mr. Ploetz's case records to be marked "null and void,"[6] the Court nonetheless finds Mr. Ploetz's circumstances do not warrant such action.

To support his argument that he lacked capacity to file his bankruptcy case and thus his records should be marked "null and void," the debtor asks the Court to consider, in addition to his own testimony, several pieces of correspondence from third parties. Mr. Ploetz did not provide affidavits to authenticate those letters, nor did he call their authors to testify. He offered those letters in support of his claim that he was "incapacitated" at the time he filed his Chapter 7 bankruptcy case, and therefore his discharge should be vacated, and the record of his bankruptcy case expunged or sealed or restricted.

---

[6] *See also In re Woods*, No. 05-32207, 2007 WL 1306427, at *1 (Bankr. W.D. Mo. May 1, 2007) ("Without a statutory anchor in the Bankruptcy Code, this Court does not believe it has the authority to declare voluntary bankruptcy petitions 'null and void.'").

13

The first third-party correspondence is a July 25, 2021 letter from Vanessa Hintz, Psy.D. ECF No. 18-2. The letter is restricted from public viewing on the Court's electronic docket. It relays Dr. Hintz's interactions with and observations of Mr. Ploetz's behavior dating back to May 2019, and briefly summarizes her review of medical records completed by another physician, Dr. Iqbal.

The second third-party correspondence is a September 29, 2021 letter, also from Dr. Hintz, and also relaying similar observations. ECF No. 26, at 2.

The third is a September 20, 2021 letter from the debtor's mother, Kimberle Ploetz, acknowledging her involvement and assistance with her son's daily living skills. ECF No. 27, at 3.

The fourth is a September 20, 2021 letter from the debtor's father, Randall Ploetz, acknowledging his assistance in the management of his son's finances. ECF No. 27, at 4.

The last is a January 26, 2021 letter from Elizabeth Partridge, an IRIS Consultant at First Person Care Consultants.[7] ECF No. 27, at 5.

The Court cannot admit the bulk of these items of correspondence. Statements of non-testifying witnesses that are offered to prove the truth of the matter(s) therein are considered hearsay and are inadmissible. Fed. R. Evid. 802; 801(c). Although statements concerning medical diagnoses and treatment are considered one of the many exceptions to the rule against hearsay under Federal Rule of Evidence 803(4),[8] that exception does not apply here. "The Rule excepts statements made *by* a person seeking medical treatment *to* the person providing that attention." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996) (emphasis added). *See also Cook v. Hoppin,* 783 F.2d 684, 690 (7th Cir. 1986) ("The test, when examining whether statements

---

[7] IRIS is a self-directed program for Wisconsin elders and adults with disabilities. www.dhs.wisconsin.gov/oris.index.htm

[8] "Rule 803. Exceptions to the Rule Against Hearsay. . . (4) Statement Made for Medical Diagnosis or Treatment. A statement that: (A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and (B) describes medical history; past or present symptoms; their inception; or their general cause."

contained in medical records relating to the cause of an injury are admissible hearsay, is whether such statements are of the type reasonably pertinent to a physician in providing treatment."); *Gong v. Hirsh,* 913 F.2d 1269, 1271–72 (7th Cir. 1990) (court considered a letter from one physician to another, but denied the exception applied for other reasons).

The letters submitted to the Court do not summarize medical information relayed by the debtor to the declarants. Rather, they are statements made by witnesses that indicate their own impressions (or the impressions of a prior physician, as is the case Dr. Hintz's letters) of the debtor's need for assistance and treatment in various aspects of his daily life to manage his ailments. Thus, because they do not contain statements by Mr. Ploetz and in his pursuit of treatment, Rule 803(4) is not triggered.

Having identified no other exclusions or exceptions to the rule against hearsay that apply to Mr. Ploetz's exhibits, the Court probes whether the residual exception under F.R.E. 807 applies.[9] "A proponent of hearsay evidence must establish five elements in order to satisfy Rule 807: '(1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice.'" *U.S. v. Moore,* 824 F.3d 620, 622 (7th Cir. 2016) (citing *U.S. v. Ochoa,* 229 F.3d 631, 638 (7th Cir. 2000)). Courts generally presume that out-of-court statements are inadmissible due to their unreliability. *U.S. v. Hooks,* 848 F.2d 785, 796 (7th Cir. 1988). A party wishing to admit hearsay evidence must rebut this presumption by showing that it is trustworthy. *Id.* Factors to consider in assessing trustworthiness are: (1) the witness' character for truth and honesty along with available evidence on the matter; (2) whether the witness was under oath or subject to cross-examination; (3) the motivation to testify; (4) whether the testimony reflects personal knowledge; (5) whether the testimony was ever recanted; (6) whether

---

[9] Rule 807 allows statements into evidence that are "supported by sufficient guarantees of trustworthiness. . . and [are] more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts."

corroborating evidence exists; and (7) reasons for the declarant's unavailability. *Moore,* 824 F.3d. at 622–23.

As for the first and sixth factors under *Moore,* the witness' character for truth and honesty and presence of corroborating evidence, the Court has no reason to dispute Dr. Hintz's honesty, nor the honesty of Mr. Ploetz's case manager or parents. There is, however, no other evidence with which to corroborate or compare their testimony. The debtor's contemporaneous statements and filings in this case undermine a finding of incompetence at the time he filed his Chapter 7 bankruptcy case. For example, on his "Certification About a Financial Management Course," he checked the box indicating he "completed an approved course in personal financial management" as opposed to the box stating he is not required to complete the course due to incapacity, disability, active duty, or residence. ECF No. 7, at 2.

The second *Moore* factor is not met because the written declarations are not accompanied by live testimony or notarized as given under penalty of perjury. Considering the third factor, motivation to testify, the Court accepts generally that healthcare provider testimony is less likely to be subject to bias than testimony of a litigant's relatives.

The fourth *Moore* factor, whether the statements are made from personal knowledge, appears to be met, with the exception of Dr. Hintz's mention of Dr. Iqbal's impressions of Mr. Ploetz's mental state during his hospitalization. The fifth *Moore* factor considers whether the statements were ever recanted. There is no evidence that any of these four letter-writers recanted their statements. No one has opposed Mr. Ploetz's motion or called witnesses to contradict his evidence. The last *Moore* factor considers the reasons for the declarants' unavailability. Mr. Ploetz, representing himself, did not supply a reason for declarants' absence from the evidentiary hearing.

In sum, having met only one of the seven *Moore* factors for circumstantial guarantees of trustworthiness, the Court finds Mr. Ploetz unable to rebut the

presumption that hearsay evidence is inadmissible, and will not consider these letters as evidence.[10],[11]

Even if the Court deemed those letters admissible, they do not overcome the evidence revealed by an examination of the bankruptcy docket in Mr. Ploetz's case and supplemented by some of the debtor's own testimony. That docket shows that Mr. Ploetz had the wherewithal to seek counsel to help with his case and knew enough about his debts to properly list them on his bankruptcy schedules. ECF No. 1. He completed a financial management course (ECF No. 7)—which is mandatory for debtors *except* in cases of incapacity, disability, or military deployment, none of which the debtor claimed were applicable to him at the time—and attended a meeting of creditors. ECF No. 4. Three months after the filing of his petition, he received a discharge and relief from his unsecured debts, which totaled $15,398. ECF No. 8. Along with the typical practice of debtor attorneys advising their clients of the benefits and consequences of filing for bankruptcy, there is no shortage of warnings on the docket. For example, Mr. Ploetz's Form 309A states, "All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at [www.pacer.gov)](www.pacer.gov)." ECF No. 4, at 1. His Form 101, titled "Voluntary Petition for Individuals Filing for Bankruptcy," states the following on its signature page: "I understand the relief available under each chapter, and I choose to proceed under Chapter 7." ECF No. 1, at 6.

---

[10] *See also In re Burton-Alston,* No. 97-1633, 2006 WL 4459981, at *4 (Bankr. M.D.N.C. May 10, 2006) (finding that a creditor's claim that she was mentally incapacitated for much of the debtor's bankruptcy case by showing, on reconsideration, that she received psychiatric treatment during the pendency of the case was unsubstantiated, not only because the evidence was irrelevant but creditor did not try to authenticate the evidence or provide any foundation for its admission).

[11] Mr. Ploetz's own testimony about his symptoms or conditions at the time he filed his bankruptcy case is admissible. *See Green v. Schroeder,* No.12-cv-761-wmc, 2016 WL 4625495, at *2 (W.D. Wis. Sept. 5, 2016), citing *Hendrickson v. Cooper,* 589 F.3d 887, 892 (7th Cir. 2009), and distinguishing between a party's testimony about his symptoms and his testimony about what caused those symptoms.

All of these steps initiated or pursued by Mr. Ploetz reflect his intention at the time, despite knowledge that record of his bankruptcy would be available for public view. Now, based on his description of the status of his mental health between May through August 2019, he asks this Court to accept that he did not fully appreciate the consequences, potential or actual, of proceeding with a Chapter 7 bankruptcy case, because he was "incapacitated."

The Court is unwilling to erect a sliding scale to assess a debtor's degree of appreciation of the consequence of his actions. First, there is no requirement in the Bankruptcy Code that a debtor be mentally competent at the time his or her case is filed. *In re McGlohon,* No. 15-06165-5-JNC at *1, 2016 WL 552332 (Bankr. E.D.N.C. Feb. 10, 2016). In cases where a debtor's mental impairment is known before or upon the filing of a bankruptcy petition, the bankruptcy court may consider appointment of a representative under Fed. R. Bankr. P. 1004.1 if "the Debtor [is] unable to participate effectively in communication and decision-making about [his/]her financial condition . . . ." *In re Maes,* 616 B.R. 784, 798 (Bankr. D. Colo. 2020).

At the hearing, Mr. Ploetz also argued that 11 U.S.C. § 109(h)[12] applied to the Court's determination of his competency. But that section concerns a debtor's ability to waive the credit counseling requirement, a waiver Mr. Ploetz did not invoke. Second, there is no Code requirement that a debtor

---

[12] 11 U.S.C. § 109(h): (1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section other than paragraph (4) of this subsection, an individual may not be a debtor under this title unless such individual has, during the 180-day period ending on the date of filing of the petition by such individual, received from an approved non-profit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.
...
(4) The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone. For the purposes of this paragraph incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and 'disability' means that the debtor is so physically Impaired as to be unable after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

demonstrate his full understanding of the consequences of seeking and obtaining a Chapter 7 discharge. *See* 11 U.S.C. § 109(a)–(b) (a debtor must be a person that resides in the United States; additionally, relief under Chapter 7 is available for all persons and entities aside from railroads and financial institutions).

Indeed, it would be impossible for Congress to quantify all the potential consequences of filing for and obtaining a Chapter 7 discharge, but the impact on credit history is one of the few effects that Congress opted to include in the Code. At his meeting of creditors, the trustee was required to inform Mr. Ploetz of "the potential consequences of seeking a discharge in bankruptcy; including the effects on credit history." 11 U.S.C. § 341(d)(1). Mr. Ploetz does not dispute that the trustee fulfilled this duty to caution him. But it appears from his testimony and his filings that Mr. Ploetz was aware that in exchange for the potential negative impact on his credit history, his discharge came with benefits: his debt was forgiven and he need no longer be burdened with the debt collection efforts of his creditors, to whom he owed over $15,000. This is not a situation of identity theft, or an unauthorized filing. Consequently, the Court does not find a basis to annotate the case record as "null and void".

### 5. Restricting Public Viewing of Certain Documents

The last alternative form of relief Mr. Ploetz requests is to limit access to the letters describing his condition or need for assistance during part of 2019. Upon motion, "[t]he court may order that a filing be made under seal without redaction." Fed. R. Bankr. P. 9037(c). This district's practice is immediately to seal the filings in question and unseal them if the motion is denied. Here, the Court pre-emptively sealed (both copies of) Dr. Hintz's letter, as it contained sensitive medical information about the debtor's circumstances. Without undertaking the analysis of whether HIPAA requires protection of records filed openly by the patient himself, the Court is willing to allow the letters authored by Dr. Hintz and those of debtor's case manager to be sealed, given their content and Mr. Ploetz's *pro se* status. On that limited basis, the Court finds

cause to grant his motion to reopen to allow those several filings to be restricted from public view.

## CONCLUSION AND ORDER

The record lacks admissible evidence that would show Mr. Ploetz's case filings were unauthorized or untrue. Instead, the filings, supported by some of debtor's own testimony, reflect that he was a diligent and capable debtor deliberately pursuing bankruptcy relief with the assistance of counsel. He received timely information about the possible negative effect on his credit score, even if he later realized a greater impact than he originally appreciated.

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED that the Court **GRANTS** Mr. Ploetz's motion to reopen his case for the limited purpose of restricting public access his personal medical information but **DENIES** his requests to expunge, seal, or otherwise notate the record of his bankruptcy case.

Dated: January 20, 2022

By the Court:

_____
Beth E. Hanan
United States Bankruptcy Judge

20

Case 19-27785-beh    Doc 34    Filed 01/20/22    Page 20 of 20